# UNITED STATES DISTRICT COURT
for the

Southern District of Texas

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Juan Jesus RIVERA-Ramirez | ) | Case No. 5:23-MJ-0188-01 |
|  *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 31, 2023__ in the county of __Webb__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 8 U.S.C. §1324(a)(1) | Knowing and in reckless disregard of the fact that a certain alien had come to, entered, and remained in the United States in violation of law, did transport and move, attempt to transport and move, and conspire to transport and move such alien within the United States, by means of transportation and otherwise, in furtherance of such violation of law. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

/S/ Francisco Castillo II
*Complainant's signature*

Submitted by reliable electronic means per Fed.R.Crim.P. 4.1, Francisco Castillo II sworn to and signature attested telephonically on February 2, 2023, at Laredo, Texas.

Christopher dos Santos
United States Magistrate Judge

## ATTACHMENT A

I am a Special Agent of the United States Homeland Security Investigations (HSI), and have knowledge of the following facts:

1. On January 31, 2023, a Border Patrol Agent (BPA) was working his assigned duties at the Border Patrol Checkpoint near the 29-mile marker of Interstate Highway-35 (IH-35) north of Laredo, Texas. At approximately 8:28PM, a purple 2015 Freightliner tractor with a white Great Dane trailer approached the truck inspection lane. Subject, Juan Jesus RIVERA-Ramirez, a citizen of Mexico, presented his B1/B2 visa to the BPA. The tractor trailer was referred to the secondary area because of a canine alert.

2. In the secondary inspection area, the seal of the trailer was cut and thirteen undocumented non-citizens (UNC) were found within the trailer. An additional five UNC's were located within the cab of the tractor including three UNC's under the cab bed and two UNC's within the cab closets. A total of eighteen UNC's were found between the tractor cab and trailer.

3. HSI agents interviewed RIVERA after he voluntarily waived his constitutional rights. RIVERA stated he agreed to transport the UNC's north of the border patrol checkpoint. RIVERA stated he was to be paid $2,000. RIVERA acknowledged that he knew there were people hidden in the tractor trailer.

4. HSI SAs identified and interviewed two (2) material witnesses: Jose Alfredo ARROYO-Gonzalez and Julian MELCHOR-Ochoa, both citizens of Mexico, respectively and illegally present in the United States. The material witnesses indicated they illegally entered the United States by way of Mexico. Both material witnesses stated arrangements were made with members of a human smuggling organization(s) (HSO) for them to be transported to cities within the interior of the United States. Both material witnesses reported smuggling fees were paid for them to be smuggled into the United States. ARROYO-Gonzalez was put into the trailer. MELCHOR-Ochoa was put within the cab of the tractor. Both material witnesses were shown a six-pack photo array. ARROYO-Gonzalez was able to successfully identify the driver of the tractor trailer as RIVERA. ARROYO described the conditions within the trailer as very cold and the UNC's were unable to escape. ARROYO further stated he feared he would die inside the trailer.